UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| CHEM-A-CO., INC., ) | |
|         Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| EARTH SCIENCE LABORATORIES, INC., ) | |
|         Defendant. ) | CAUSE NO.: 4:04-CV-15-AS |
| _____) | |
| EARTH SCIENCE LABORATORIES, INC., ) | |
|         Counterclaimant, ) | |
| ) | |
| v. ) | |
| ) | |
| CHEM-A-CO., INC., ) | |
|         Counterclaim Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on Earth Science Laboratories, Inc.'s Renewed Motion to Compel Limited to the Disputed Scope of Discovery [DE 82], filed by the Defendant/Counterclaim Plaintiff, Earth Science Laboratories, Inc. ("ESL"), on May 16, 2005, and a Motion for Protective Order [DE 85], filed by the Plaintiff/Counterclaim Defendant, Chem-A-Co., Inc. ("CAC"), on June 3, 2005.

**BACKGROUND**

On February 2, 2004, CAC filed a Complaint, and on March 10, 2004, CAC filed an Amended Complaint. The Amended Complaint alleges violations of the Lanham Act and tortious interference with business relationships and provides, in relevant part:

> 7. As further set forth in Exhibit A hereto, ESL alleges that Chem-A-Co's business practices violate specific trade laws and common law. Chem-A-Co disputes those

allegations. Thus, there exists an actual controversy between Chem-A-Co and ESL, within the jurisdiction of this Court, involving the rights, duties, and obligations of the parties, which controversies may be determined by a judgment of this Court, without other suits.

. . . .

9. ESL has intentionally and recklessly made false and misleading statements and representations of fact concerning the characteristics and performance of its products and Chem-A-Co's products to businesses, customers, consumers, the media, and the public.

10. Specifically, ESL has misrepresented the carrier component and precipitation features of Chem-A-Co's products and, on information and belief, has misrepresented the existence of supposed "secret" ingredients in ESL products. ESL knows that its statements are not true, and, consequently, it has made its misrepresentations in bad faith.

11. ESL has also intentionally made false and misleading statements and representations of fact concerning Chem-A-Co's products and commercial activities to businesses, customers, consumers, the media, and the public.

. . . .

16. ESL has created confusion concerning its and Chem-A-Co's products by intentionally and recklessly misrepresenting the nature, characteristics, properties, and performance of those products to businesses, customers, consumers, the media, and the public. In fact, ESL has specifically and knowingly directed its misrepresentations to customers of Chem-A-Co.

17. The natural and probable tendency and effect of ESL's conduct is to deceive the public and potential customers of Chem-A-Co so as to pass off ESL's products as equivalent to or better than Chem-A-Co's products. They are not.

[DE 1].

On June 10, 2004, ESL filed an Amended Answer and Counterclaim, and on September 23, 2004, ESL filed a Second Amended Answer and Counterclaim, which contains four counts. On February 25, 2005, the District Court granted CAC's Motion for Judgment on the Pleadings with respect to Counts II and III of ESL's Second Amended Counterclaim, which relate to a request for declaratory judgment concerning CAC's rights under EPA Registration #61943 and CAC's rights

2

under a 1991 Letter of Intent and CAC's licensing rights to the "SCI products." In its Order, the District Court reasoned that,

> beyond a doubt the defendant cannot plead any facts that would support a claim for relief. Due to the estoppel and res judicata effects of "The Nebraska Case" decision and the dismissal with prejudice of Chem-A-Co. from "The Nebraska Case," this Court **GRANTS** plaintiff's motion for judgment on the pleadings in favor of this plaintiff and against this defendant.

[DE 77]. The remaining two counts of the Second Amended Counterclaim, Counts I and IV, allege unfair competition, false designation of origin, false or misleading description of fact and/or false or misleading representation of fact, and tortious interference with business relationships. These counts are based on alleged statements made by a representative of CAC in an email to an ESL customer that (1) CAC's alternative to ESL's product is actually "the original product of Earthtec [an ESL product]," Sec. Am. Counterclaim, ¶ 19; and that (2) "SCI-62, once manufactured by Sorber Chemicals, Inc. in Holdrege, NE, was purchased by two companies, Earth Science Laboratories and Chem-A-Co, Inc. CAC purchased the rights, name, and EPA reg. #, then moved to Monticello, IN. ESL purchased the buildings and manufacturing equipment, their epa [sic] is attached to the original epa [sic] registration of SCI-62," *id*. at  ¶ 20. The counts are also based upon other statements that CAC and/or its representatives have made regarding false designation of origin, false or misleading description of fact and/or false or misleading representations of fact regarding ESL, and ESL's products.

## ANALYSIS

### A.  Local Rule 37.1

Along with the Motion to Compel, ESL filed a Local Rule 37.1 certification and represented that the parties exchanged written communication between May 11 and May 16, 2005, in an attempt to resolve this discovery dispute.  CAC did not file a Local Rule 37.1 certification of any kind in connection with its Motion for Protective Order.  Local Rule 37.1(a) requires that the certification must include the date, time, and place of the conference required by Federal Rule 37(a)(2)(B) and the names of all persons participating therein.  From the certification provided by ESL, it appears that no such conference was held.  Local Rule 37.1(c) also permits the Court to deny a motion under Federal Rules 26(c), 37(a)(2)(A), 37(a)(2)(B), or 37(d) if the required certification is not filed.  After having reviewed the briefing of these motions, the Court finds that any additional informal conference between the parties would have little likelihood of success in resolving the dispute at hand.  Under these circumstances, the Court will consider the motions on their merits.

### B.  Motion to Compel and Motion for Protective Order

In the Motion to Compel, ESL requests an order from the Court compelling discovery relating to (1) the parties' respective manufacturing processes, (2) parties' products (including the active components thereof), and (3) the products' properties and performance.  ESL suggests that the proper scope of discovery include:

> a.  An inspection by an expert retained jointly or separately by the parties of the parties' respective manufacturing facilities during the manufacture of CAC's SCI-62, SCI-30 (including any equivalents thereof) and ESL's EARTHTEC products;
>
> b. Chemical analysis of the products referenced in (a) above to determine whether the competing products and product components are the same or different to one

> skilled in the art on the basis of chemical formulae, physical properties, and dermal toxicity;
>
> c. CAC be required to produce to ESL's expert (and, if the parties ever agree on or the court appoints an expert, a court-appointed or stipulated joint expert) some of CAC's base or carrier component for testing by ESL's expert; and
>
> d. All other discovery normally allowable in light of the remaining claims.

Def. Br., p. 4-5.

In response, CAC seeks a Protective Order from the Court denying ESL discovery concerning CAC's confidential manufacturing processes, know-how, product formulations, and all other trade secrets that are a part of CAC's manufacturing operations. CAC also requests that, if the Court grants ESL's Motion to Compel, that the Court require ESL to post a surety bond of at least $2,000,000 in addition to subjecting the information to the standing Protective Order in this case.

*1. Motion to Compel - Relevance*

District courts have broad discretion in matters relating to discovery. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citing *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646-47 (7th Cir.2001); *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir.1993)). Federal Rule of Civil Procedure 26 provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Discovery is relevant if it appears reasonably calculated to lead to the discovery of admissible evidence. *Id*.

In support of the Motion to Compel, ESL argues that the issues that remain in this litigation, as framed by a fair reading of the pleadings, require discovery to focus on (1) the chemical

5

composition, properties, and performance of the parties' respective commercial products, including the active components thereof, and (2) the truthfulness of CAC's express and implied statements in the marketplace and/or to regulators that it is selling the original product of EARTHTEC and that CAC's product, SCI-62 was once manufactured in Holdrege.  ESL further argues, without explanation, that the dismissal of Counts II and III in ESL's Second Amended Counterclaim does not "eliminate the need for discovery on the parties' respective products, including their active ingredients," or "diminish ESL's rights to examine CAC's manufacturing processes, products and performance by a third party operating under the Protective Order in order to pursue its Claims in Counts I and IV, or to defend itself against CAC's Amended Complaint."  Def. Br., p. 2.

Specifically, ESL makes two arguments in support of its position.  First, in Part B, ESL argues that, in order for this legal dispute to be resolved, any resolution must involve the final determination as to whether CAC manufactures the same chemical that was originally registered as a pesticide with the EPA, which ESL argues would require that the technologies of both ESL and CAC be made known to the Court and compared to the technology that was used at Sorber Chemical to manufacture the registered pesticide product SCI-62, EPA #61943.  ESL argues that this discovery is relevant to its remaining Counterclaims, which includes discovery on whether CAC is truthful in claiming that it is selling "the original product of EARTHTEC" or has its product "SCI-62" which was "once manufactured by Sorber Chemicals, Inc. in Holdrege, NE," and was the subject of a "purchase" by CAC and that CAC "purchased the rights, name, and EPA reg. #."  Amend. Cmplt., ¶¶ 19, 20.  ESL's concern, as expressed in Counts I and IV of its Second Amended Counterclaim, involve CAC's unwarranted claims that its product is "the same as" ESL's product.

In its second argument, in Part C of the brief in support, entitled "A Determination that the Products are Different Will Aid the Parties and the Public," ESL reasons that

6

> ESL acquired this technology when it acquired Sorber Chemical. CAC never received this technology from Chemstar, Sorber Chemcial, or ESL. The technology that CAC uses was either obtained from another source, or it was developed internally. ESL has found no record of CAC having submitted its product to the EPA for review to assure the regulators and the public that the chemical that CAC is now manufacturing with the proprietary technology that it does not want to share under the Protective Order is the same chemical that was manufactured by Sorber Chemical and registered by Chemstar. *It would be impossible for the Court, ESL, or any other party to make this determination without first examining the process, product and performance of CAC's chemical.*

Def. Br., p. 5-6 (emphasis added).

ESL makes no specific argument nor explains in the memorandum in support of the Motion to Compel or in its Reply Brief as to how the technology and manufacturing processes used to produce the CAC products relate to Counts I and IV of the Amended Counterclaim or its defenses to the Amended Complaint, other than to say that (1) CAC claims that it developed new technology for itself and did not acquire it from a third party and (2) CAC's claim that its product is "the same as" ESL's product is unwarranted.

First, the claims in Counts II and III of ESL's Second Amended Counterclaim relating to the development and acquisition of technology by CAC were determined in the Nebraska case and the District Court in this case has held that the Nebraska Case has res judicata and collateral estoppel effect in this matter. ESL has not explained how the discovery it seeks into the manufacturing processes is not duplicative of the issues decided in the Nebraska case. Rather, ESL's explanation in its memorandum in support as to why it seeks an inspection of CAC's manufacturing facilities appears to directly and only relate to the issues that were adjudicated in the Nebraska Case, i.e. whether CAC uses a production formula-method that traces back to the products from Sorber Chemicals, Inc. and which the District Court in this case dismissed. Second, ESL does not explain how discovery into the CAC's manufacturing processes is relevant to the determination of whether

7

CAC's product is "the same as" ESL's product.  Nor has ESL argued why the holdings of the Nebraska case are insufficient to provide the factual support or opposition to CAC's alleged claim that CAC developed the technology itself rather than acquiring it from a third party.  Other than the issues related to the Nebraska case, ESL's arguments are generalities, lacking any specific connection to the issues remaining in the case as relevant to the claims in CAC's Amended Complaint or to Counts I and IV in ESL's Second Amended Counterclaim.  In contrast, CAC argues that the discovery sought by ESL is aimed only at the claims that have been dismissed from this cause of action; ESL provides no specific response to CAC's arguments in its reply brief.

Count I of ESL's Amended Counterclaim alleges unfair competition, false designation of origin, and false or misleading description under § 43(a) of the Lanham Act.  Count IV alleges tortious interference with business relationships.  Neither of these claims appear to require discovery of CAC's manufacturing processes, nor has ESL explained how such discovery is likely to lead to admissible evidence.  ESL's claim for tortious interference with a contractual relationship also relates to the alleged representations and claims made to others about the traits of the products offered for sale; these claims do not relate to representations about the technologies or manufacturing processes that result in those products.

Moreover, ESL's concerns about public safety and federal regulators, raised in Part C of its brief, are not at issue in this case.  ESL's reference to "regulators," the "public," and "any other party" raise questions as to the purpose for which ESL seeks the proprietary information regarding manufacturing processes.

The Court finds that ESL has not demonstrated or explained why an examination of the parties' respective manufacturing process technologies and other proprietary information related to the manufacturing processs is relevant  to the determination of whether the chemical manufactured

8

and sold by CAC (SCI-62 and its component SCI-30) is different from ESL's product EARTHTEC. Nor has ESL shown how CAC's allegations that ESL has made false statements regarding CAC's products are linked to the technology CAC uses to make its product rather than the components and performance of the product itself. It appears from the District Court's order granting the Motion for Judgment on the Pleadings that the issues related to the underlying technology and manufacturing processes are no longer at issue in this case. The Court finds that discovery into the parties' respective manufacturing process technologies is not relevant to the issues remaining in this case, and ESL's request for an inspection of CAC's manufacturing facilities is denied.

In contrast, however, discovery as to the properties, chemical composition, and performance of the CAC products is relevant to the remaining claims in this matter. The Amended Complaint and the Second Amended Counterclaim both raise issues as to the properties and performance of the parties' products. Paragraph 9 of the Amended Complaint alleges that "ESL made false and misleading statements and representations of fact concerning the characteristics and performance of its products and Chem-A-Co's products," and Paragraph 10 of the Amended Complaint alleges that ESL has "misrepresented the carrier component and precipitation features of Chem-A-Co's products and, on information and belief, has misrepresented the existence of supposed "secret" ingredients in ESL products." Am. Compl., ¶¶ 9, 10. Nevertheless, CAC argues that ESL can procure the relevant discovery it seeks on these issues by obtaining CAC's products on the open market and by testing them, and ESL has not refuted this suggestion nor explained why such testing would be insufficient. Therefore, at this time, ESL's request for a court order requiring a chemical analysis of CAC's products and that CAC produce to ESL's expert some of CAC's base or carrier component for testing by ESL's expert is denied.

Accordingly, the Court will not grant the motion to compel as to the discovery of the properties, chemical composition, and performance of the products at this time. However, if such discovery is not obtainable by ESL from the testing of samples obtained on the open market, the Court will entertain a future motion to compel discovery as to the properties, chemical composition, and performance of the parties' products, which may require CAC to produce to ESL's expert some of CAC's base or carrier component for testing. Any such future motion shall set forth with particularity the obstacles to obtaining the discovery from testing on the open market, the specific discovery sought from the opposing party, and specific analysis as to how the discovery is relevant to the claims remaining in this action with references to the counts in the Amended Complaint and Second Amended Counterclaim. The Court also suggests to the parties that the exchange of any such information be pursuant to the protective order already of record in this cause of action.

Finally, the Court notes that ESL's reply brief does not address any of CAC's arguments as to the relevance of the sought-after discovery to this litigation other than to reference and incorporate its opening brief. Rather, ESL spends the majority of its reply brief suggesting means by which proper safeguards could be established without the need for a surety bond, specifically the use of a court-appointed expert. First, the request for court-appointed expert is not properly before the Court in the form of a motion or an alternative motion; it is insufficient to raise the issue in a reply brief. Moreover, considering the use of a court-appointed expert is only necessary if the Court first determines that the discovery sought by ESL is relevant and discoverable. ESL has provided no additional support on this foundational consideration and does not refute CAC's position that the discovery of the manufacturing processes is no longer relevant to the remaining claims in this case and that discovery of the products' properties and performance can be obtained through the testing of samples available on the open market.

*2. Protective Order*

Federal Rule of Civil Procedure 26 permits the Court to order "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(7).[1] There is no per se privilege exempting trade secrets from discovery, but "courts must exercise discretion to avoid unnecessary disclosure of [trade secret] information." *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 422 (S.D. Ind. 2001) (citing *AutoMed Technologies, Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) (quoting *Triangle Ink and Color Co. v. Sherwin-Williams Co.*, 61 F.R.D. 634, 636 (N.D. Ill.1974)).

A protective order under Rule 26(c)(7) may be appropriate when (1) "the interest for which protection is sought is an actual trade secret or other confidential business information protected under the Rule, *and* that (2) there is good cause for the protective order." *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 340 (N.D. Ill. 1998) (emphasis added). "To establish good cause . . . the courts have generally required 'specific examples of articulated reasoning' as opposed to 'stereotyped and conclusory statements.'" *Rossi*, at 341 (party seeking to block disclosure must "prove that disclosure will result in a 'clearly defined and very serious injury' to its business") (citing United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978)). "Good cause for the issuance of a

---

[1] Federal Rule of Civil Procedure 26(c)(7) provides:

(c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be take may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
. . . .
(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way.

The Court notes that CAC has cited no standard for Rule 26(c)(7).

11

protective order can be demonstrated by the existence of a trade secret in the record." *In re Bank One Securities Litigation*, 222 F.R.D. 582, 587 (N.D. Ill. 2004) (citing *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2002)).

In other words, the Court may enter a protective order governing a trade secret provided that "the judge (1) satisfies himself that the parties know what a trade secret is and are acting in good faith in deciding which parts of the record are trade secrets and (2) makes explicit that either party can challenge the secreting of particular documents." *Id*. at 588 (citing *Citizens First Nat'l Bank of Princeton*, 178 F.3d at 946).

Although CAC argues that its manufacturing processes and product "formulas" are proprietary information and that it would suffer harm in an allegedly highly competitive industry if its competitor had access to this information, CAC has not set forth sufficient information in its memorandum in support to meet its burden of showing that its manufacturing processes, product formulae, or other alleged proprietary information constitute "trade secrets." *See Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001) (discussing the four characteristics of a protectable trade secret under the Indiana Uniform Trade Secret Act) (citing I.C. § 24-2-3-2; *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000)). "The burden of proof is on the party asserting the trade secret to show that it is included in the categories of protectable trade secret information listed in the trade secrets statute." *Id*. (citing *Amoco Prod. Co. v. Laird*, 622 N.E.2d 912, 920 (Ind. 1993); *Doe v. Marsalis*, 202 F.R.D. 233, 237 (N.D. Ill. 2001)). Accordingly, the Court denies without prejudice the Motion for Protective Order.

**CONCLUSION**

Based on the foregoing, the Court **DENIES in part** and **DENIES in part without prejudice** the Renewed Motion to Compel Limited to the Disputed Scope of Discovery [DE 82] and **DENIES without prejudice** the Motion for Protective Order [DE 85].  The Court **DENIES** the Motion to Compel as to the parties' manufacturing processes and technologies and **DENIES without prejudice** the Motion to Compel as to the parties' products' active components, properties, and performance.

So ORDERED this 13th day of July, 2005.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record