UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| CHEM-A-CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:04CV0015 AS |
| | ) | |
| EARTH SCIENCE LABORATORIES, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| EARTH SCIENCE LABORATORIES, INC., | ) | |
| | ) | |
| Counterclaimant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHEM-A-CO., INC., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

**MEMORANDUM, ORDER & OPINION**

This matter is before the Court on the Motion for Partial Summary Judgment (Docket No. 91) filed by Plaintiff and Counterclaim Defendant Chem-A-Co., Inc. Oral arguments were heard on this motion in Lafayette, Indiana on July 19, 2006, and the issues have been fully briefed. For the reasons set forth below, Chem-A-Co., Inc.'s motion is **GRANTED**. Accordingly, the Clerk is **ORDERED to DISMISS** Count IV of Earth Science Laboratories, Inc.'s Second Amended Counterclaim **with prejudice**.

I.   Introduction

On February 2, 2004, Chem-A-Co., Inc. ("CAC") filed a Complaint for Declaratory Judgment against Earth Science Laboratories, Inc. ("ESL") in the White County, Indiana

Superior Court.  The case was removed to this Court by ESL on February 20, 2004.  On March 10, 2004, CAC filed an Amended Complaint against ESL, alleging violations of the Lanham Act, unfair competition, and tortious interference with a business relationship.  On September 23, 2004, ESL filed a Second Amended Counterclaim against CAC, alleging unfair competition under the Lanham Act, breach of contract, and tortious interference with a business relationship.  CAC filed its Motion for Summary Judgment as to Count IV of ESL's Second Amended Counterclaim, which alleges tortious interference with a business relationship, claiming that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

II.     Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The moving party bears the burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875

2

F.2d 613, 620 (7th Cir. 1989).  "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988).  Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment is proper.  In this situation, there can be "'no genuine issue of any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

    III.    Facts

CAC and ESL manufacture and sell chemicals used for water purification.  Donald Peters, a former employee and sales representative of ESL, sent an email on December 12, 2003 to representatives of Aquatrols, an ESL customer.  The email, according to ESL, contained false and misleading information.  Specifically, ESL contends that the email falsely and misleadingly states: (1) that CAC's product is the same as ESL's EarthTec Product, when in fact the products are different; (2) that CAC purchased certain rights from Chemstar, when in fact it only licensed those rights; and (3) that the scope of ESL's purchase was limited to buildings and manufacturing equipment, when in fact ESL purchased products, formulae, trade secrets, rights, title and interest in and to any and all licenses, permits and registrations, confidential information, know-how, formulation, processes and technology relating to the manufacture, use, and sale of the SCI-30 and SCI-62 products, goodwill, trade names, buildings, equipment, raw materials, trademarks, and other property of Sorber Chemicals.

ESL hired Dr. Leonard Chyall to conduct tests on ESL's EarthTec product and CAC's

SCI-62 product to determine whether they are, in fact, the same products.  Dr. Chyall concluded that the ESL and CAC products are different.

   IV.   Discussion

ESL's claim is based on an email sent by Donald Peters to Aquatrols.  That email states, in relevant part:

> I am writing you, to inform you of an alternative to the Radiance (Earthtec) [sic] product.  Actually it is the original product of Earthtec [sic].  Our company is willing to offer you your private label of our product, SCI-62.
>
> SCI-62, once manufactured by Sorber Chemicals, Inc. in Holdredge, NE, was purchased by two companies, Earth Science Laboratories and Chem-A-Co., Inc.  CAC purchased the rights, name and epa reg. #, then moved to Monticello, IN.  ESL purchased the buildings and manufacturing equipment, their epa is attached to the original epa registration of SCI-62.
>
> At this time, I would like to extend an offer to you.  I am unsure of the amount of product you are selling, but I can offer you a price of $14.18 per gallon plus freight. and [sic] If would be interested truck [sic] load pricing I can do a full truck load for $10.65 per gallon plus freight.  We would be happy to apply any labels you provide at our manufacturing facility.
>
> If Your [sic] service and pricing are satisfactory with ESL, then I would see no reason to change manufacturers, but if your price, [sic] or quality of service should ever change, feel free to contact me or visit our website for more information on our company, services, and products.
>
> I would be happy to schedule a meeting with you to discuss our products and options.

Counterclaimant's Brief in Opposition to Summary Judgment, Exhibit A.  ESL contends that the email amounts to tortious interference with a business relationship because it contains false and misleading representations.  The Court disagrees.

To prevail on a claim of tortious interference with a business relationship under Indiana law, a plaintiff must prove: "(1) the existence of a valid relationship; (2) the defendant's

4

knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; (5) damages resulting from defendant's wrongful interference with the relationship." *Rice v. Hulsey*, 829 N.E.2d 87, 91 (Ind. Ct. App. 2005) (quoting *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 n.21 (Ind. 2001)). Additionally, a plaintiff must prove "some independent illegal action." *Brazauskas v. Ft. Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003); *see also, Watson Rural Water Co., Inc. v. Ind. Cities Water Corp.*, 540 N.E.2d 131, 139 (Ind. Ct. App. 1989).

ESL's claim fails because it has not designated any evidence that would allow a jury to find that CAC acted without justification. *See Celotex*, 477 U.S. at 323 (stating that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). Under Indiana law, the "absence of justification" element is affirmatively "established only if the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another." *Bilimoria Computer Sys., LLC v. America Online, Inc.*, 829 N.E.2d 150, 156-57 (Ind. Ct. App. 2005). Federal courts interpreting tortious interference with a business relationship under Indiana law have similarly held that a defendant whose action is motivated in part by a legitimate business interest is not acting without justification. *See, e.g.*, *Mfg. Direct LLC, v. DirectBuy, Inc.*, No. 2:05-CV-451, 2006 WL 2095247 at *9 (N.D. Ind. July 26, 2006) (holding that failure to allege that Defendant had no legitimate business justification in exercising its rights under franchise agreement warranted dismissal); *United Consumers Club, Inc. v. Bledsoe*, No. 2:97-CV-276, 2006 WL 2037378, at *13 (N.D. Ind. July 17, 2006) (stating that the "existence of a legitimate reason for the defendant's actions provides the necessary justification

to avoid liability.") (citations omitted); *Smith v. Biomet, Inc.*, 384 F. Supp. 2d 1241, 1249 (N.D. Ind. 2005) (stating that plaintiff must show that defendant acted exclusively to harm plaintiff's business interest); *Economation, Inc. v. Automated Conveyor Sys., Inc.*, 694 F.Supp. 553, 562 (S.D. Ind. 1988) (stating that the "existence of a legitimate reason for the defendants' actions will provide the necessary justification to preclude judgment for the plaintiff in the tort action.") (emphasis and citations omitted).  This approach is consistent with the interpretation of the same element in cases involving tortious interference with contract under Indiana law.  *See, e.g.*, *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000) (stating that to satisfy the lack of justification element, the "breach must be malicious and exclusively directed to the injury and damage of another.") (citing *Winkler v. V.G. Reed & Sons, Inc.*, 619 N.E.2d 597, 600-01 (Ind. Ct. App. 1993)); *Flintridge Station Associates v. Am. Fletcher Mortgage Co.*, 761 F.2d 434, 441 (7th Cir. 1985) (defining unjustified as "disinterested malevolence" or "malicious [conduct] unmixed with any other and exclusively directed to injury and damage of another.").

Competition is a legitimate business interest and has been held to provide justification to preclude a tortious interference claim.  *Economation*, 694 F.Supp. at 562.[1]  In this case, it is clear

---

[1] This approach is supported by the Restatement (Second) of Torts § 768 (1977), which Indiana Courts turn to for assistance on this issue.  *See Rice*, 829 N.E.2d at 91 (Ind. Ct. App. 2005).  The commentary to the Restatement explains:

> One's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors.  In order not to hamper competition unduly, the rule stated in this Section entitles one not only to seek to divert business from his competitors generally but also from a particular competitor.  And he may seek to do so directly by express inducement as well as indirectly by attractive offers of his own goods or services. . . The rule stated in this Section rests on the belief that

6

from the face of the email that CAC was acting, at least in part, to compete with ESL and promote its own legitimate business interests by attempting to sell its product to potential customers. The email states, "I would like to extend an offer to you." Peters' Email, Counterclaimant's Brief in Opposition to Summary Judgment, Exhibit A. It quotes the potential customer a price and further states that if the customer's "service and pricing are satisfactory with ESL, then I would see no reason to change manufacturers, but if your price, [sic] or quality of service should ever change, feel free to contact me or visit our website for more information on our company, services, and products." *Id*. Whatever else motivated CAC to send the email, it is undisputed that the email was intended to entice the customer to buy from CAC instead of its competitor, ESL. That is competition, which means that CAC was pursuing a legitimate business interest and was not acting exclusively to harm ESL. CAC's actions, therefore, are justified under Indiana law.

The Court recognizes that some recent Indiana state court decisions have taken a different approach. Those cases state that "[o]n the issue of justification when it concerns competitors in business we have turned to the Restatement (Second) of Torts § 768 (1977) for assistance." *See, e.g.*, *Rice v. Hulsey*, 829 N.E.2d 87, 91 (Ind. Ct. App. 2005) (quoting *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 877 (Ind. Ct. App. 1998)). That section states, in part:

> § 768 Competition as Proper or Improper Interference
>
> (1) One who intentionally causes a third person not to enter into a perspective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's

---

competition is a necessary or desirable incident of free enterprise.

Restatement (Second) of Torts § 768 (1977) at comments b, e.

relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint on trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

Restatement (Second) of Torts § 768 (1977).  Under the Restatement standard, and according to ESL, if one employs "wrongful means" there can be no justification.[2]  That interpretation is at odds with cases stating that the mere existence of a legitimate business interest will provide justification.  *E.g.*, *Bilimoria*, 829 N.E.2d at 156-57; *Mfg. Direct LLC, v. DirectBuy, Inc.*, No. 2:05-CV-451, 2006 WL 2095247 at *9 (N.D. Ind. July 26, 2006); *Economation*, 694 F.Supp. at 562.  Even so, the Restatement standard does not salvage ESL's tort claim.  While ESL does not cite any authority defining "wrongful means," it is clear that there must be something more than merely including incorrect information in an email communication.  ESL has not designated any evidence to show that the information in the email was anything more than incorrect.  It has not shown, for example, that the email amounted to fraud, deceit, intentional misrepresentation, deliberate disparagement, or any similar type of conduct; the record is devoid of any evidence

---

[2]This Court notes that the practical result of applying Section 768 of the Restatement to the justification element of tortious interference claims is to make that element superfluous.  Tortious interference with a business relationship requires an "independent illegal action." *Rice*, 829 N.E.2d at 91.  Whenever an illegal action has occurred, it seems that the actor will necessarily have used "wrongful means."  If every time an actor employs wrongful means he acts without justification, the justification element is useless.  Either there is no illegal action and therefore no tort; or wrongful means have been employed, and therefore there can be no justification.

showing that Mr. Peters knew the information contained in the email was incorrect or that he intended to mislead Aquatrols.[3] ESL's conclusory statements are simply not enough. Therefore, ESL has not designated evidence that would allow a reasonable jury to find that CAC acted without justification.

    V.    Conclusion

For the foregoing reasons, Chem-A-Co's Motion for Partial Summary Judgment is **GRANTED**. Accordingly, the Clerk is **ORDERED to DISMISS** Count IV of Earth Science Laboratories, Inc.'s Second Amended Counterclaim **with prejudice**.

**SO ORDERED**.

**DATE: September 18, 2006**

    s/Allen Sharp
    **ALLEN SHARP, JUDGE**
    **UNITED STATES DISTRICT COURT**

---

[3] See *Soderlund Bros., Inc. v. Carrier Corp.*, 663 N.E.2d 1, 8 (Ill. Ct. App. 1996) (stating, "[a]cts of competition which are never privileged, include fraud, deceit, intimidation, or deliberate disparagement.") (citations omitted).